## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

| | | |
|---|---|---|
| LORETTA DRAKE AND, | ) | |
| AND LONNIE DRAKE | ) | |
| on Behalf of Themselves and | ) | **PROPOSED COLLECTIVE ACTION** |
| All Others Similarly-situated, | ) | **UNDER FLSA AND CLASS ACTION** |
| | ) | **UNDER KWHA** |
| *Plaintiff,* | ) | |
| | ) | CASE NO.   4:19-CV-137-JHM |
| v. | ) | |
| | ) | |
| MUHLENBERG COUNTY | ) | **JURY DEMANDED** |
| FISCAL COURT, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

### COMPLAINT

Come Plaintiffs Loretta Drake and Lonnie Drake, by and through counsel, and, on behalf of themselves and all others similarly-situated, bring this action as both a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA") and a class action under the Kentucky Wages and Hours Act ("KWHA") against Defendant Muhlenberg County Fiscal Court.

### Summary of the Action

1.     Defendant operates a jail in Greenville, Muhlenberg County, Kentucky.  Defendant employs non-exempt employees at that jail, including Plaintiff Loretta Drake (Plaintiff Lonnie Drake was previously employed in a non-exempt position at the jail).  Plaintiffs bring this Complaint for Defendant's violations of its statutory obligations to pay employees for work performed, including overtime work.  Specifically, Defendant willfully engaged in a practice of not paying its employees for compensable work, including work performed before and after scheduled shifts and when employees would "switch shifts" with other employees or "cover" shifts for other employees.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the claims of Plaintiffs and those similarly-situated pursuant to 28 U.S.C. §§ 1331 and 1337, and 29 U.S.C. § 216(b).

3.      This Court has and should exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' claims under the KWHA because they are so related to Plaintiffs' claims under the FLSA that they form part of the same case or controversy and arise from the same set of operative facts as Plaintiffs' claims under the FLSA.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant operates a facility located in the Western District of Kentucky, in Greenville, Muhlenberg County, Kentucky (the "Jail") and employs Plaintiff Loretta Drake (and previously employed Defendant Lonnie Drake) at that Jail and thus Defendant conducts business and can be found in the Western District of Kentucky.

## PARTIES

5.      Plaintiffs (hereafter referred to collectively as "Plaintiffs" or "Plaintiff" unless one of them is identified by name) are residents of Muhlenberg County, Kentucky.

6.      Defendant is a governmental entity and a subdivision of the Commonwealth of Kentucky.

7.      Defendant may be served by service upon its Judge Executive, Curtis McGehee, at 100 S. Main St., Greenville, KY 42345.

8.      Defendant employs Plaintiff Loretta Drake and non-exempt employees similarly-situated to Plaintiff, including in its Jail.

9.      In the last five years, Defendant has employed in its Jail in non-exempt positions many other employees who are no longer current employees, including Plaintiff Lonnie Drake,

and those employees are similarly-situated to Plaintiffs with respect to the issues relating to nonpayment of overtime compensation addressed herein.

10.    The Jail in Greenville, Kentucky is in Muhlenberg County, within the District of the United States District Court for the Western District of Kentucky.

11.    Defendant, by operating the Jail and employing Plaintiffs and other similarly-situated at the Jail, operated an "enterprise engaged in commerce or in the production of goods for commerce," as defined in 29 U.S.C. § 203(s), and, specifically, an "activity of a public agency" under 29 U.S.C. § 203(s)(1)(C).

12.    Defendant is a "public agency" as defined in 29 U.S.C. § 203(x).

## FACTUAL ALLEGATIONS

13.    Plaintiff Loretta Drake is an employee of Defendant and has worked for Defendant as a "Deputy Jailer" at the Jail for more than 15 years prior to the filing of this action; Plaintiff Lonnie Drake was employed by Defendant as a "Deputy Jailer" at the Jail for more than 15 years prior to his separation from employment with Defendant in May, 2019.

14.    Throughout their employment with Defendant, Plaintiffs were at all times non-exempt employees of Defendant within the meaning of the FLSA.

15.    Further, Defendant has at all times classified the position of "Deputy Jailer" as non-exempt under the FLSA.

16.    The work of "Deputy Jailer" involves dealing with, securing, and caring for inmates of the Jail.

17.    Defendant did not maintain a timeclock for its employees at the Jail.

18.    Instead, Defendant instructed Deputy Jailers that they were to work twelve-hour shifts, which Defendant scheduled.

19.     Because there were only two twelve-hour shifts (one being from 7:00 p.m. to 7:00 a.m. and the other being from 7:00 a.m. to 7:00 p.m.), and because the Jail was required to be staffed at all times to ensure that the inmates would not escape (amongst other things), there was by necessity an overlap amongst the two shifts.

20.     Specifically, the employees of each shift would arrive while the employees of the previous shift were still working, and began working while the employees of the previous shift were still working.

21.     Indeed, an essential part of the work was to speak with the members of the previous shift to understand what had occurred in the jail during the previous shift to know what arrangements needed to be made for and in relation to inmates for the upcoming shift.

22.     Accordingly, by necessity, Defendant's Jail employees generally began working prior to the scheduled beginning of their shift and/or generally continued working after the scheduled end of their shift.

23.     However, Defendant operated under a fiction that the workers on each shift began working at exactly at 7:00 a.m. or 7:00 pm and stopped working at exactly 7:00 p.m., twelve hours later, and that the two shifts never worked at the same time.

24.     The result of this fiction, and of Defendant failing to use a timeclock to monitor and pay employees for the actual time worked by employees, was that Defendant failed to pay employees for time worked before and after their scheduled shifts.

25.     Defendant has numerous video cameras which depict the activities in the Jail and which will substantiate that employees performed more twelve hours of work per day, but were only compensated for twelve hours for each shift of work.

26.     In addition, Defendant was perpetually short-staffed and therefore created policies designed to prevent employees from utilizing vacation or sick days unless the employee arranged for another employee to work in the place of the employee utilizing a vacation or sick day; while these policies were not in and of themselves illegal, they were combined with inaccurate record-keeping and pay practices that had the effect of not paying employees for overtime work performed.

27.     Specifically, if an employee wanted to take a particular day off of work, Defendant would often tell the employee that the employee could not do so unless the employee arranged to "switch shifts" with a Deputy Jailer on another shift so that the shift usually worked by the employee desiring to take the day off would not be understaffed.

28.     However, although Defendant was well aware of the fact that employees would "switch shifts", and, in fact, specifically directed employees to "switch shifts" rather than to use a vacation or sick day, Defendant did not pay employees overtime pay based on the actual number of shifts that they worked.

29.     Instead, Defendant would pay Deputy Jailers only the amount of overtime which they would have worked if they had worked the shifts as originally scheduled (i.e., the shifts they would have worked in the absence of "switching shifts").

30.     In other words, although Defendant was aware that employees would, as a result of "shift switching," work five (and sometimes more than five) twelve-hour shifts in a work week, Defendant would pay that employee as if the employee had worked the employees regular schedule, which would include, at most, four twelve-hour shifts per work week.

31.     As a result, employees who worked sixty hours of shift time (not including work before and after scheduled shifts) in a workweek would only be paid by Defendant for eight hours

of overtime work, although Defendant knew that the employee had in fact performed twenty or more hours of overtime work (not including work before and after scheduled shifts) in that workweek.

32.     While the practice of "switching shifts" would sometimes result in an employee being paid overtime for a workweek when the employee did not in fact work overtime in a particular workweek, the overall net effect, on average, of Defendant paying employees as if they had not "switched shifts" when Defendant knew that the employees had in fact "switched shifts" was that Defendant paid less in overtime compensation to Plaintiffs and similarly-situated employees than Defendant should have paid.

33.     Upon information and belief, the Defendant maintains records which reflect which employees worked on which shifts, including annotations regarding the fact that employees other than those originally scheduled to work the shift are working a shift because they "switched shifts" with an employee who was originally scheduled to work the shift in question.

34.     Accordingly, from these records (among other evidence), the trier of fact will be able to calculate the number of overtime hours which Defendant should have paid, but did not pay, because of its practice of pretending that employees did not "switch shifts".

35.     To illustrate the somewhat unusual schedule which Defendant had its Deputy Jailers work, attached hereto as Exhibit 1 is Plaintiff Loretta Drake's work schedule for the entire year 2019; dates indicated with a star are dates which Defendant assigned Plaintiff Loretta Drake to work.

36.     Defendant pays employees based on a workweek beginning at either 7:00 a.m. or 7:00 p.m. on Sunday or Monday.[1]  This has the effect of dividing the six continuous days of twelve-

---

[1]     Rather than showing the actual date of the beginning and ending of the pay period, which would for a biweekly pay period ordinarily coincide with two workweeks, Defendant bizarrely indicates on pay stubs issued to

hour shifts which Defendant assigns its employees to work into multiple work weeks so that employees is scheduled to work either three twelve-hour shifts or four twelve-hour shifts in each work week.

37.     Accordingly, because Defendant pretends that Deputy Jailers work only exactly twelve hours per shift (when they actually work more than twelve hours per shift), and because Defendant pretends that Deputy Jailers work as exactly as originally scheduled (when Defendant knows that Deputy Jailers "switch shifts"), Defendant pays each Deputy Jailer the same amount every two weeks.

38.     Specifically, Defendant pays each Deputy Jailer seventy-six hours of regular time every two weeks (thirty-six hours for the workweek containing three twelve-hour shifts and forty hours for the workweek containing four-twelve hour shifts)  and eight hours of overtime pay every two weeks (for the eight additional hours scheduled beyond forty in the workweek containing four twelve-hour shifts).

39.     Stated another way, Defendant paid Plaintiffs and the similarly-situated employees based on the assumption that each employee works three twelve-hour shifts in one week in the pay period (totaling thirty-six regular hours), and works four twelve-hours shifts (totaling forty regular hours and eight overtime hours) in the other work week of the pay period

40.     Attached hereto as Exhibit 2 is a paystub of Loretta Drake reflecting this pay arrangement.

41.     In addition to the failure to pay for time worked before and after scheduled shifts and the failure to pay for additional overtime worked due to employees "switching shifts," Defendant also failed to pay overtime pay in connection with a third illegal practice.

---

Plaintiff that the pay period, which contains two weeks of pay, begins and ends on the same day.  See Paystub attached hereto as Exhibit 2 (showing 84 hours of work "For Period 10/30/18 to 10/30/18").

42.     Specifically, for a particular period of time, because it did not want its number of employees working to fall too low, Defendant allowed a practice whereby, if an employee on a particular shift wanted to take the shift off but did not want to "switch shifts" and work the shift of an employee regularly scheduled to work a different shift, the employee could take the time off, arrange for an employee regularly scheduled to work another shift to work the shift in question, and then pay that employee cash for "covering" for the employee taking the day off.

43.     When this occurred, Defendant would be aware that the employees had not worked as scheduled and that the "covering" employee had worked an additional day (in addition to such employee's regularly scheduled number of shifts), but Defendant would pay both the "covering" employee and the employee whose shift was "covered" as if each had worked as originally scheduled (i.e. Defendant would pay each employee as if the "covering" had not occurred).

44.     At some point within the three years prior to the filing of this Complaint (or, in the alternative, at some point within the five years prior to the filing of this Complaint), Defendant informed its employees that it had decided that this practice was illegal and that they should no longer engage in this practice.

45.     However, despite itself concluding that it had engaged in an illegal practice which resulted in the nonpayment of overtime pay due to employees, Defendant did nothing to ensure that employees who had "covered" the shifts of other employees and thereby worked additional overtime hours were paid for that overtime work.

46.     Upon information and belief, the records maintained by Defendant of the employees working each shift (referenced in paragraph 33 above) will show the employees who "covered" for other employees' shifts and thereby allow the calculation of the amount of overtime compensation which Defendant failed to pay to the "covering" employees.

## COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

47.     Plaintiffs bring this action under the FLSA on behalf of themselves and all similarly-situated current and former employees of Defendant who worked for Defendant and were not paid for overtime work performing the activities described above which Defendant should have paid within the last three years for work for Defendant at the Jail.

48.     Stated another way, Plaintiffs seek to bring this action as a collective action under the FLSA on behalf of the following persons:

> all current and former employees of Muhlenberg County Fiscal Court who worked in the Muhlenberg County Jail who (A) were not paid all overtime compensation due for such employee's work in one or more workweeks because Defendant did not pay the employee for time worked (1) before and/or after scheduled shifts, or (2) by such employee after switching shifts with another employee or covering another employee's shift, and (B) worked, during such workweek(s), in a position which is non-exempt under the Kentucky Wages and Hours Act, (C) worked more than forty hours in such workweek, and (D) were scheduled to receive payment for work performed in such workweek(s) on or after October 4, 2016.

49.     The employment policies, practices and agreements of Defendant raise questions of fact common to the class including:

a.     whether Defendant has engaged in a pattern or practice of permitting or requiring Plaintiffs and members of the proposed class to work in excess of forty hours per workweek for the benefit of Defendant and without appropriate compensation, in violation of the FLSA;

b.     whether Defendant has engaged in a pattern or practice of failing to keep accurate records showing all hours worked by Plaintiffs and members of the proposed class, in violation of the FLSA;

c.     whether the conduct of Defendant was willful;

d.      whether Plaintiffs and members of the proposed class are entitled to lost wages, liquidated damages and the other relief requested.

50.      The claims of Plaintiffs are similar to those of the proposed class members, in that Plaintiffs have been subject to the same conduct as members of the putative collective action and Plaintiffs' claims are based on the same legal theory as members of the collective action.

51.      Plaintiffs' FLSA claims are maintainable as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b).  Plaintiffs' consents to join this action are attached hereto as Exhibits 3 and 4.

## CLASS ACTION ALLEGATIONS RELATING TO DEFENDANTS' VIOLATION OF THE KWHA PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23

52.      Plaintiffs bring this action under Kentucky state law on behalf of themselves and all similarly-situated current and former employees of Defendant who worked for Defendant within the last five years in any non-exempt position for which such employee's time was recorded using a timeclock.

53.      Plaintiffs bring this action on behalf of themselves and the following proposed class of similarly-situated employees:

all current and former employees of Muhlenberg County Fiscal Court who worked in the Muhlenberg County Jail who (A) were not fully compensated for all of such employee's work in one or more workweeks because Defendant did not pay the employee for time worked (1) before and/or after scheduled shifts, or (2) by such employee after switching shifts with another employee or covering another employee's shift, and (B) worked, during such workweek(s), in a position which is non-exempt under the Kentucky Wages and Hours Act, and (C) were scheduled to receive payment for work performed in such workweek(s) on or after October 4, 2014.

54.      Plaintiffs are members of the class they seek to represent.

55.     Defendant failed to pay Plaintiffs and the members of the class they seek to represent wages for work performed, as described herein, in violation of Kentucky law, including the Kentucky Wages and Hours Act.

56.     Under Kentucky law, employers are required to compensate employees for all of the time that those employees spend working.

57.     Accordingly, Defendant's refusal to pay Plaintiffs for all of the hours that Plaintiffs actually worked violated Kentucky law.

58.     The Rule 23 class is sufficiently numerous that joinder of all members is impractical, satisfying Federal Rule of Civil Procedure 23(a)(1). On information and belief, Defendant has employed scores or hundreds of individuals in Kentucky who were subject to Defendant's illegal policy described above of not paying for compensable work.

59.     All members of the Rule 23 Class share the same pivotal questions of law and fact, thereby satisfying Federal Rule of Civil Procedure 23(a)(2).  Namely, all members of the Rule 23 class share the questions of (1) whether Defendant paid them for all time worked; and (2) whether Defendant's failure to pay class members for all time worked resulted in Defendant violating the Kentucky Wage Statutes.

60.     The claims of Plaintiffs are typical of the claims of the Rule 23 Class, thus satisfying Federal Rule of Civil Procedure 23(a)(3).  Defendant's failure to pay Plaintiffs for all hours worked was not the result of any Plaintiff-specific circumstances.  Rather, it arose from Defendant's common pay policies, which Defendant applied generally to its employees.

61.     Plaintiffs will fairly and adequately represent and protect the interests of the Rule 23 Class.

62.     Further, Plaintiffs have retained competent counsel experienced in representing classes of employees against their employers related to their employers' failure to pay them properly under the law, thus satisfying Federal Rule of Civil Procedure 23(a)(4).

63.     By failing to pay Plaintiff, and similarly-situated employees, for all hours, Defendant has created a scenario where questions of law and fact common to the Rule 23 Class Members predominate over any questions affecting only individual members. Thus, a class action is superior to other available methods for fair and efficient adjudication of this matter. Accordingly, Plaintiffs should be permitted to pursue the claims herein as a class action, pursuant to Federal Rule of Civil Procedure 23(b)(3).

## COUNT I – VIOLATION OF FLSA – NONPAYMENT OF OVERTIME – PLAINTIFFS AND THOSE SIMILARLY-SITUATED

64.     Plaintiffs incorporate by reference all preceding paragraphs as if the same were set forth again fully at this point.

65.     Defendant has willfully violated the FLSA by engaging in a pattern or practice (or patterns or practices) of:

    a.      failing to keep accurate records showing all the time it permitted and/or required Plaintiffs and members of the proposed collective action to work, from the first compensable act to the last compensable act, which has resulted in the denial of compensation at an overtime rate as required by the FLSA, for all time worked in excess of forty hours in a work week; and

    b.      permitting and/or requiring Plaintiffs and members of the proposed collective action to perform integral and indispensable activities (work) with, and in addition to working forty hours in a work week, for the benefit

of Defendant and without compensation at the applicable federal overtime rates.

66.     As a result of Defendant's violations of the FLSA, Plaintiffs and those similarly-situated to them suffered damages, including their lost overtime pay, for which they should be awarded compensatory damages, liquidated damages, and attorney's fees and other reasonable litigation expenses.

## COUNT II – VIOLATION OF KY. REV. STAT. ANN. §§ 337.275, ET SEQ BY NONPAYMENT OF WAGES.

67.     All previous paragraphs are incorporated as though fully set forth herein.

68.     Plaintiffs brings this claim on behalf of all members of the proposed Rule 23 Class.

69.     Kentucky state law requires that covered employees be compensated for every hour worked in a workweek. See KY. REV. STAT. ANN. §§ 337.275, *et seq.*.

70.     KY. REV. STAT. ANN. § 337.285 requires that employees receive overtime compensation "not less than one and one-half (1-1/2) times" the employee's regular rate of pay for all hours worked over forty in one workweek.

71.     During all times material to this complaint, Defendant was a covered employer required to comply with the Kentucky Wage Statutes.

72.     During all times material to this complaint Plaintiffs and the Rule 23 Class were covered employees entitled to the protections of the KWHA.

73.     Plaintiff, and the Rule 23 Class she seeks to represent are not exempt from receiving the KWHA's overtime benefits because they do not fall within any of the exemptions set forth therein. See KY. REV. STAT. ANN. § 337.285(2).

74.     Defendant has violated the KWHA with respect to Plaintiffs and the Rule 23 Class by, inter alia, failing to compensate them for all hours worked at their regular rate (for time

worked under forty hours per week) and at time-and-one-half overtime rates for all additional hours.

75.     In violating the KWHA, Defendant acted willfully and with reckless disregard of clearly applicable provisions of the KWHA.

76.     Pursuant to the KWHA, including KY. REV. STAT. ANN. § 337.385, Defendant, because it failed to pay employees the required amount of wages and overtime at the statutory rate, must reimburse the employees not only for the unpaid wages, but also for liquidated damages in an amount equal to the amount of unpaid wages.

77.     Pursuant to the KWHA, including KY. REV. STAT. ANN. § 337.385, Plaintiffs and the Rule 23 Class are entitled to reimbursement of the litigation costs and attorney's fees expended if they are successful in prosecuting an action for unpaid wages.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray that the Court:

A.     Issue process and bring Defendant before the Court;

B.     Authorize notice to issue to members of the proposed collective action and permitting similarly-situated persons a reasonable opportunity to join this litigation with respect to claims under the FLSA;

C.     Certify a class of similarly-situated employees whose rights were violated by Defendant under State law, and grant relief available under state law, including unpaid wages, liquidated damages, and attorney's fees and other litigation expenses, to the class;

D.     Empanel a jury for the trial of all issues of fact;

E.    Enter a judgment awarding Plaintiffs and similarly-situated persons joining this litigation damages from Defendant, including compensation for unrecorded work time, interest, and liquidated or exemplary damages, in amounts to be proven at trial;

F.    Award Plaintiffs and similarly-situated persons joining this litigation all costs of litigation, including expert fees and attorneys' fees;

G.    Grant Plaintiffs and similarly-situated persons joining this litigation all costs of litigation such other further and/or general relief, legal and/or equitable relief, to which they are entitled or which the Court otherwise deems appropriate.

Respectfully submitted,

/s/ Mark N. Foster
Mark N. Foster
Law Office of Mark N. Foster, PLLC
P.O. Box 869
Madisonville, KY 42431
(270) 213-1303
Mfoster@MarkNFoster.com
*Counsel for Plaintiffs*